STATE of Missouri, Plaintiff-Respondent,

v.

Richard Hollice CARTER, Defendant-Appellant.

No. 37234.

Missouri Court of Appeals, St. Louis District, Division Two.

July 20, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

James C. Jones, Kent Fanning, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Douglas Mooney, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Thomas M. Daley, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendant was convicted by a jury of Attempted Burglary Second Degree, Sections 560.045, 556.150(3) RSMo 1969 and sentenced to two years imprisonment. He raises three points on appeal: (1) that the trial court erred in denying his motion for a judgment of acquittal at the close of all the evidence because the state's evidence showed, if anything, a completed act of burglary, not attempted burglary; (2) even if the state's evidence showed attempted burglary, the trial court erred in denying defendant's motion for acquittal because there was insufficient evidence of intent to commit attempted burglary; and (3) that the trial court erred in giving its instruction No. 6 because it did not follow MAI–CR 7.22, and 2.06, and thus did not sufficiently separate the elements of the offense of attempted burglary. We have examined these contentions and affirm defendant's conviction.

A detailed discussion of the facts is required due to defendant's challenge to the sufficiency of the evidence.

Paul Houston resided at 5760 Highland Avenue, St. Louis, on August 26, 1974. At about 1:00 p. m. he left for work. This

residence had two doors. Only the north door was ever used; the other was kept nailed and bolted shut, and faced south opposite an alley. It had a glass window protected by an iron mesh grate. There was a screen door outside of this door kept locked by a "fishhook." Above was a roof which extended outward over slab concrete, forming a porch. This roof was supported by two braces made of 2′ x 4′s which pointed up from the bolted door. The screen door, the bolted wooden door, the window, and iron grate were all intact when Houston left for work.

At 3:17 p. m. Officer John Thomas responded to a call directing him to go to 5760 Highland and investigate a report of prowlers attempting to gain entrance. Officers Hughes, Loehr, and Simora were travelling together in a police van a block away from the Highland address. They also responded to the broadcast and arrived there less than a minute later. They stopped the van about fifty feet from the Houston residence. There the officers saw three black youths, including the defendant, standing on the concrete porch in back of the bolted door.

The testimonies of the officers conflict as to what defendant was doing at this time. According to Officers Hughes and Loehr, defendant was holding the screen door open. A second youth was holding onto a supporting 2′ x 4′ with his right hand, the left hand was on top of the porch roof bracing his body, and his feet were swinging up against the bolted door below the window area. He was being supported by either a third youth as Officers Hughes and Loehr testified, or by defendant himself, as Officer Simora testified. One youth was using a metal object (referred to as a barbecue spicate) to push in the iron grate which guarded the window. The officers began to alight from the van. Defendant turned around, saw the officers, and called out, "The police." All three youths began to run. The police apprehended defendant and the other two youths after a short chase.

The officers examined the porch area. The screen door was partly open. The window glass on the bolted door was completely broken out. The metal grate over the window had been pushed in and pried back on three sides. The bolted door was still shut. The officers called Paul Houston at work. When he arrived he noticed the screen door was open and that there was a hole in it. He also saw the glass was completely broken out and the metal grate was ripped on three sides and hanging down. He looked inside his home and nothing was disturbed.

Defendant's first contention is that the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence because the state's evidence showed, if anything, a completed act of burglary. Thus, he argues, he could not be convicted of attempted burglary.

■ The elements of burglary are breaking and entering a dwelling house with intent to commit a felony or steal therein. *State v. Brunson,* 516 S.W.2d 799, 801[1] (Mo.App.1974); § 560.045 RSMo 1969. Defendant argues that he fulfilled the requirement of "entering" in addition to that of "breaking" due to the fact that he had access to the inside of the house. He relies on the facts that the glass on the bolted door was completely broken in, the metal grate was hanging down, and that the victim testified that "someone could get in there if they wanted to."

■■ Our law holds that the presence of any part of the burglar's body within the premises is sufficient entry to fulfill that requirement of burglary. *State v. Watson,* 383 S.W.2d 753, 756[4] (Mo.1964); *State v. Tierney,* 371 S.W.2d 321, 323[3] (Mo.1963). It does not hold that "ability to enter" is synonymous with "entry in fact." Here there was no showing that any part of defendant's body was inside the house at anytime. Hence entry, an essential element of the completed crime of burglary, *State v. Pigques,* 310 S.W.2d 942, 945[2] (Mo.1958), has not been shown. The authorities relied on by defendant focus on the issue of what amount of force is neces-

sary to constitute "breaking" and "entering." *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972); *State v. Bradley,* 485 S.W.2d 408 (Mo.1972); *State v. Rhodes,* 408 S.W.2d 68 (Mo.1966). They do not define "entry."

■ *State v. Pigques,*[1] supra, also heavily relied on by defendant, does not support his theory but in fact states the general rule that some part of the body must intrude within the premises in order to constitute "entry" as a matter of law. Defendant's first point is without merit.

Defendant's second point of appeal is that there was insufficient evidence of intent to commit attempted burglary because the intent to steal or commit a felony has not been proven. Intent to commit the crime is one of the elements of an attempted crime, *State v. Miles,* 510 S.W.2d 787, 790[4] (Mo. App.1974). The intent required by the burglary second degree statute is "intent to commit a felony or to steal," § 560.045, and is thus incorporated by the attempt statute, § 556.150. Since intent is a state of mind, there is no direct proof of it. Thus the rule is that intent may be inferred from the circumstances, *State v. Faber,* 499 S.W.2d 790 (Mo.1973), 22 C.J.S. Criminal Law § 75(3) (1961), and becomes a question of fact for the jury. Here the evidence shows that defendant was either holding open the screen door which had been locked, or holding up his companion who was attempting to swing his feet through the bolted door. Another youth was using a barbecue spicate to pry away the metal grill from the window of the bolted door where the glass was completely broken out. There was a hole in the screen door and damage to both doors. All this indicates a concerted effort to enter the house, not merely to injure the property, and consequently the inference is reasonable that the intent was to steal once entry was gained. The jury could reasonably conclude this to be the object of the youths' exertions, and indeed every reasonable hypothesis of innocence is excluded by this evidence. Evidence of tampering with and prying open a door permits the infer-

ence of the requisite intent so as to sustain a conviction of attempted burglary. *State v. Taylor,* 445 S.W.2d 282 (Mo.1969); *State v. Newman,* 391 S.W.2d 207 (Mo.1965).

■ Finally defendant contends that instruction No. 6 given by the trial court was a prejudicial deviation from the MAI–CR 7.22 as modified by 2.06 and 2.12 because it did not sufficiently separate the elements of the offense. The portion of the instruction objected to was, "If you find . . . the defendant and others *attempted but failed to break into and enter* the dwelling place of Paul Houston . . ." The instruction contended for by appellant reads, "If you find . . . the defendant and others *attempted but failed to break into* the dwelling place of Paul Houston . . *and attempted but failed to enter therein* . . . ." (Emphasis supplied).

Defendant argues that because the words "break into" and "enter" are separated by a number of words in MAI–CR 7.22 it is necessary to emphasize that these are two distinct requirements and that it was prejudicial not to use the words "and attempted but failed to" before the word "enter." We believe that the failure to use the words "and attempted but failed to" before the word "enter" was a deviation from MAI–CR 7.22 as modified by MAI–CR 2.06 and constituted an error.

Rule 20.02(c) states that MAI–CR pattern instructions must be used when available. Rule 20.02(e) states that violation of the above rule is error and that the prejudicial effect therefrom is to be judicially determined. However, we have determined that this technical deviation was not prejudicial to the defendant. Both elements of the crime are sufficiently separated by the conjunctive "and" in the phrase "attempted but failed to break into *and* enter." (Emphasis added). The jury was also instructed that it must find the defendant guilty of "each and all of the foregoing," [submitted elements]. This phrase was held to have saved a faulty instruction in *State v. Adams,* 531 S.W.2d 763, 764[1] (Mo.App.1975).

1. For comment on this case, see 24 Mo.L.Rev. 371 (1959).

Immediately thereafter in this case, the jury was further instructed "[b]urglary in the second degree is the *breaking and entering* of the dwelling house . . . ." (Emphasis supplied). Thus the jury was advised that it was required to find both elements in order to convict the defendant.

In summary, we do not believe the instruction as given was prejudicial or in any way misleading. The error in the instruction did not affect its substantive meaning.

The judgment is affirmed.

CLEMENS, P. J., and STEWART, J., concur.