STATE of Missouri,
Plaintiff-Respondent,

v.

Roy William BROCKMAN,
Defendant-Appellant.

No. 42354.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 25, 1982.

---

Daniel V. O'Brien, Michael Flynn, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

PUDLOWSKI, Judge.

This is an appeal from judgment entered against the defendant on November 21, 1979 in the circuit court of St. Louis County for class B kidnapping and class A rape. The punishment was assessed at ten years for kidnapping and thirteen years for rape. The sentences are to be served consecutively. The facts are as follows.

At 4:00 a. m. on April 13, 1979, the victim departed from her place of employment in St. Louis County and began to walk to her home which was located a few blocks away. On her way home, a man came up behind the victim and pressed a knife to her throat. The assailant walked her to a nearby car and forced her into the trunk. The car was bluish-green in color with a number of gray paint primer spots.

The assailant started the car and began driving. While inside the trunk the victim discovered a tool box. She obtained a file-type tool from the box and attempted to open the trunk. In order to obtain more light, the victim pulled out the taillights of the car. When she disconnected the wires, the taillights went out. After five to eight minutes had elapsed the assailant stopped the car and removed the victim from the trunk. The assailant forced the victim to a wooded area and proceeded to rape her repeatedly. During the sexual assaults the victim had ample opportunity to view the assailant's face and a six inch scar located on the assailant's abdomen.

Upon conclusion of the sexual attacks the assailant permitted the victim to leave. She returned home and the police were subsequently summoned. She gave a definitive description to the police of the assailant, his clothing, the knife and the automobile.

After several days the police spotted a vehicle matching the description given by the victim and additionally noted that the vehicle lacked a rear bumper. The victim confirmed the fact that the absence of a rear bumper was another characteristic of the assailant's car. From the license plate number of the car the police obtained the name and address of the defendant. After receiving the information pertaining to the ownership of the car the police proceeded to defendant's home and arrested him for abduction and rape. Pursuant to that arrest the police seized a knife which was on the defendant's person and matched the type of knife described by the victim.

After handcuffing the defendant, but before the defendant received a *Miranda* warning, the arresting officer asked the defendant if he could search the trunk of defendant's car for the purse the victim lost on the night she was attacked. The defendant consented to the search. Upon opening the trunk, the police found a tool box and noticed the taillights which were jerked from their sockets. The automobile was seized and moved to the Maplewood Police Station.

Upon his arrival at the police station, the defendant was advised of his rights. During the evening of April 16, 1979, the defendant was placed in a line-up and identi-

fied by the victim as her assailant. After the identification the defendant was again informed of his rights, and he acknowledged his understanding of those rights. He was placed in a cell until the following morning when he was transported to the St. Louis County Jail. Just prior to the transfer a police officer asked the defendant, without re-informing him of his rights, if he had anything to say. The defendant responded, "Well, I was drunk and I don't remember doing anything but you seem to have all the evidence." The defendant was subsequently tried and convicted, and his appeal followed.

■ In his first point on appeal, the defendant asserts that the trial judge committed prejudicial error when he issued the "hammer" instruction, MAI–CR 1.10, after he was informed of the numerical division of the jury with respect to acquittal or conviction. It is true that *State v. Sanders*, 552 S.W.2d 39 (Mo.App.1977), held that MAI–CR 1.10 is improper in the aforesaid situation. That holding, however, was overruled in *State v. Broadux*, 618 S.W.2d 649, 653 (Mo.banc 1981). We are constrained to follow *Broadux* and hold that the trial judge did not abuse his discretion by reading MAI–CR 1.10 after receiving voluntary, unsolicited information that nine jurors favored a guilty verdict and three jurors favored acquittal. *State v. Broadux, supra* at 652.

■ In his next point on appeal, defendant alleges that the use at trial of the evidence seized from him was improper, because the police obtained the evidence through a warrantless search and seizure following an unlawful arrest. Defendant asserts that the arrest and the subsequent seizure were unlawful because the police lacked probable cause. Whether the police had probable cause to arrest the defendant is the issue before us. We find that they did.

■ In Missouri the rule is: "Information possessed by an officer that a felony has been committed and sufficient identification of the suspect as the perpetrator of the felony constitutes probable cause to believe that the offense was committed by the suspect . . . ." *State v. Robinson*, 484 S.W.2d 186, 190 (Mo.1972). Admittedly, in this case the defendant was identified through his automobile. The victim, however, gave the police a detailed identification of both the assailant and his automobile. We conclude under the facts of this case that the police had sufficient probable cause to arrest the defendant.

■ In his final point on appeal, the defendant alleges that the trial judge should have suppressed the statement he made to the police on the morning of April 17, 1979, because that statement was made during an unlawful arrest. Our previous discussion demonstrates that the defendant's arrest was lawful. In conjunction with that contention the defendant suggests the possibility of coercion by the police in eliciting the defendant's statement. There is absolutely no evidence in the record suggesting that the police exercised duress or coercion to obtain the defendant's statement. In the absence of such evidence it must be assumed that the defendant's statement was voluntary. *State v. Hollis*, 584 S.W.2d 137, 144 (Mo.App.1979). Finally, the defendant asserts that his statement is inadmissible because he was not re-informed of his rights on the morning of April 17. *Miranda* warnings need not be given each time the accused is questioned. *State v. Woodward*, 587 S.W.2d 287, 289 (Mo.App.1979). Thus, we reject defendant's claim.

Judgment affirmed.

SMITH, P. J., and SATZ, J., concur.