**STATE of Missouri, Respondent,**

v.

**John PARSON, Appellant.**

**No. 58513.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 27, 1991.
Rehearing Denied Sept. 25, 1991.

Murray Stone, St. Louis, for appellant.

William L. Webster, Atty. Gen., Barbara J. Wood, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

John Parson appeals from a jury conviction for second degree assault in violation of § 565.060 RSMo 1986. Appellant was sentenced as a prior offender to three years' imprisonment. We affirm.

Because appellant does not challenge the sufficiency of the evidence, we need not relate it in detail. Viewed in a light most favorable to the verdict, the evidence at trial established the following facts. Near midnight on July 11, 1989, the victim was working as a cashier at a fast-food restaurant in St. Louis. At that time, appellant

approached the walk-up window, and soon thereafter appellant and the victim argued about appellant's order. While the victim's arm was outside the window, appellant grabbed the victim's arm and slammed the window shut. During the struggle, appellant pulled out a shiny object which looked like a knife or razor and struck the victim's hand between the index finger and thumb. The victim sustained a cut to his hand.

Appellant in his first point raises instructional error. The trial began on March 26, 1990, and at 11:25 a.m. on March 27, 1990, the jury retired to deliberate. At 1:05 p.m., the jury was excused for lunch; deliberations resumed at 3:00 p.m. At 4:50 p.m., the trial court informed counsel it was going to give MAI–CR 3d 312.10 [1], the "hammer" instruction. At 4:52 p.m., after the jury had been deliberating for about three and one-half hours, the court recalled the jury into the courtroom and on its own motion over the objection of appellant's counsel stated to the jury: "[Y]ou have been deliberating this case now for some substantial period of time.... Without telling me how you stand with reference to guilt or non-guilt, ... can you tell me, Mr. Foreman or Forelady, how you stand numerically?" The foreman replied, "We're eight to four." The trial court then gave MAI–CR 3d 312.10. The jury retired for further deliberations and returned at 5:30 p.m. with a verdict finding appellant guilty of second degree assault.

Appellant claims error in the trial court's reading the "hammer" instruction to the jury after three and one-half hours of deliberation. Appellant further argues that by telling the jury it had already deliberated for a "substantial" period of time and sending it back with the "hammer" instruction, the trial court expressed its expectation that the jury should return its verdict promptly and conveyed a sense of pressure directing the jury to reach a verdict. We disagree.

The length of time a jury is allowed to deliberate and the decision whether to read MAI–CR 3d 312.10 are within the discretion of the trial court. *State v. Harris*, 751 S.W.2d 131, 132 (Mo.App.1988). The notes accompanying the instruction provide that it may be given "when the court deems it appropriate and when the length of deliberation or communication from the jury causes the court to believe that the jury may be deadlocked." MAI–CR 3d 312.10, Notes on Use 2. In order to establish an abuse of discretion it must be shown that, based on the record of what was said and done at the time of trial, the verdict of the jury was coerced. *State v. Anderson*, 698 S.W.2d 849, 853 (Mo. banc 1985) (*citing State v. Talbert*, 454 S.W.2d 1, 4–5 (Mo.1970)). The fact that a jury returns a verdict shortly after the "hammer" instruction is given does not establish coercion. *State v. Hyzer*, 729 S.W.2d 576, 578 (Mo.App.1987). Furthermore, the instruction itself is not coercive. It urges open and frank discussion, tolerance, and the desirability of a unanimous verdict, but cautions each juror against basing a verdict on evidence he does not believe is true. *State v. Calmese*, 657 S.W.2d 662, 663 (Mo. App.1983).

From a review of the record, we find no evidence the verdict was coerced. Nothing indicates the court in giving the instruction was informed whether the jury's numerical split favored conviction. *See State v. Morant*, 758 S.W.2d 110, 119 (Mo.App.1988). Further, nothing in the record indicates the court failed to follow the instruction's Notes on Use, *see State v. Sutton*, 699 S.W.2d 783, 786 (Mo.App.1985), or issued a deadline directing the jury to reach a verdict. *See State v. Leroy*, 724 S.W.2d 277, 278–79 (Mo.App.1987).

1. The version of MAI–CR 3d 312.10 in effect at the time of trial read: "You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he does not believe beyond a reasonable doubt to be true."

Finally, the lengths of the jury's initial and post-instructional deliberations do not show a breach of the trial court's discretion. Here, the jury deliberated three and one-half hours before the trial court gave the instruction, and returned its verdict thirty-eight minutes thereafter. Courts were found to have properly exercised their discretion in giving the "hammer" instruction in cases involving shorter initial and post-instructional deliberation times than those in the present case. *See Harris*, 751 S.W.2d at 132 (jury deliberated two hours and fifteen minutes before instruction and returned a verdict twenty minutes thereafter); *State v. Smith*, 686 S.W.2d 43, 45 (Mo.App.1985) (deliberation for two hours and thirty-eight minutes before instruction, and return of verdict thirty minutes after); *Calmese*, 657 S.W.2d at 663 (deliberation for two and one-half hours, and return of verdict thirty minutes after instruction).

Accordingly, appellant has failed to prove the instruction coerced the jury into a decision. We find no abuse of discretion in the trial court's giving MAI–CR 3d 312.-10. Point one is denied.

Appellant in his second point contends the trial court abused its discretion in excluding photographs of the window where the alleged attack occurred as a sanction for defense counsel's violation of Rule 25.05(A)(3). The photographs were taken by appellant the night before trial and revealed to defense counsel the next morning. The victim, a witness for the state, testified that the window was "fully covered with rubber"; appellant's counsel then attempted to introduce the photographs as impeachment evidence. The trial court sustained the state's objection to the introduction of the photographs because defense counsel had not previously disclosed the photographs to the state despite the state's request for discovery.

Rule 25.05(A)(3) requires a defendant, on written request by the state, to disclose to the state those parts of any books, papers, documents, photographs, or objects, except such as contain statements of the defendant, which the defendant intends to introduce into evidence at a hearing or trial.

Appellant does not dispute that his nondisclosure violated Rule 25.05. However, appellant argues that the trial court's choice of exclusion as a sanction for violating the rule was an abuse of discretion resulting in fundamental unfairness to appellant, since (1) the evidence was relevant and vital to appellant's theory that the victim's injury was caused by the window's sharp metal edges; and (2) appellant was denied the ability to effectively cross-examine the victim.

Rule 25.16 provides sanctions for failure to comply with discovery rules: a trial court may grant a continuance, exclude the evidence, order a party to disclose material and information not previously disclosed, or enter such other orders as it deems just under the circumstances. The imposition of sanctions as a remedy for a discovery violation rests within the sound discretion of the trial court. *State v. James*, 796 S.W.2d 398, 400 (Mo.App.1990). The trial court abuses its discretion only when the sanctions result in fundamental unfairness to the defendant. *Id.; State v. Watson*, 755 S.W.2d 644, 645 (Mo.App.1988).

Defendant has failed to demonstrate fundamental unfairness in the trial court's exclusion of the photographs. Appellant cross-examined both the victim and the restaurant security guard concerning the description and condition of the window; the guard's testimony directly contradicted the victim's. Further, appellant testified in his own behalf and again contradicted the victim's testimony. Because a complete description of the window was adduced through the testimony of witnesses, we cannot deem the exclusion of photographs depicting the window fundamentally unfair to appellant. *See James*, 796 S.W.2d at 400; *State v. Premier Serv. Corp.*, 765 S.W.2d 653, 657 (Mo.App.1989). We find no abuse of discretion in the trial court's imposition of the exclusionary sanction. Point two is denied.

In his third and final point, appellant asserts the trial court plainly erred in permitting the state to cross-examine him concerning his prior arrests. Under plain error review, the error complained of must so

substantially affect the rights of appellant that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Miller*, 604 S.W.2d 702, 706 (Mo.App.1980). We find no plain error on the facts before us.

At trial, appellant took the stand and on direct examination testified as follows:

[BY DEFENSE COUNSEL] Q. Have you ever used a knife in your life on someone?

[BY APPELLANT] A. No.

    \*     \*     \*     \*     \*     \*

Q. Did you ever use a razor on anyone?

A. No.

Q. Do you carry weapons with you?

A. No.

On cross-examination, the state asked appellant, "Mr. Parson, you told these ladies and gentlemen of the jury that you never carried any weapons, is that correct?" Appellant answered, "True." The state then questioned appellant about his prior arrests for unlawful use of a weapon and assault in the second degree, both of which appellant admitted.

Appellant asserts the state's cross-examination of appellant regarding his prior arrests was manifestly prejudicial, relying principally on *State v. Dunn*, 577 S.W.2d 649 (Mo. banc 1979) and *State v. Cleveland*, 583 S.W.2d 263 (Mo.App.1979). *Dunn* held that, with respect to prior crimes and misconduct not resulting in conviction, a court should limit cross-examination of a defendant testifying in his own defense "where the cross-examination is technically purely collateral as to general credibility and the nature is such as to impair the defendant's right to a fair trial on the charge brought against him." *Dunn*, 577 S.W.2d at 653. *Cleveland* adds a second limiting factor upon a trial court's discretion to permit and control cross-examination of a defendant concerning prior unconvicted acts: the tendency of the offense to show a liar's disposition. *Cleveland*, 583 S.W.2d at 267.

■ While we do not dispute the rationale of these cases, they are not controlling here. *Dunn* does not prohibit the state from questioning a defendant concerning his prior misconduct when the defendant on direct examination disavows the prior misconduct. *State v. Whitt*, 592 S.W.2d 316, 317 (Mo.App.1979). It is true that as a general rule, it is impermissible to attack the credibility of a testifying defendant through evidence of a mere arrest or investigation not resulting in conviction. *State v. Ballard*, 657 S.W.2d 302, 306 (Mo.App. 1983). However, this rule does not apply if a defendant has "opened up" the issue of prior arrests. *State v. Ball*, 736 S.W.2d 551 (Mo.App.1987) (*citing State v. Dunlap*, 706 S.W.2d 272, 274, 276[3] (Mo.App.1986)). Once an accused has on direct examination opened up the issue of his good character, he may be impeached with prior arrests to test (1) whether he truthfully is a person of good character; and (2) his trustworthiness and credibility as a witness in his own behalf. *State v. Macon*, 547 S.W.2d 507, 514 (Mo.App.1977).

■ We find that appellant opened the door to cross-examination concerning his prior arrests. As noted earlier, appellant at trial replied in the negative when on direct examination defense counsel asked him if he had ever used a knife or razor on anyone; appellant also answered "no" when his counsel asked, "Do you carry weapons with you?" In the context of the line of inquiry, appellant's latter response could be interpreted in either of two ways: that appellant did not carry weapons with him on the night of the incident in question; or that appellant had never carried weapons. Because of the uncertainty, the state on cross-examination asked the clarifying question, "Mr. Parson, you told these ladies and gentlemen of the jury that you never carried weapons, is that correct?" Without objection, appellant answered, "True." The state then had the right to impeach appellant with questions concerning his prior arrests. *See Whitt*, 592 S.W.2d at 317.

We find that appellant on direct examination invited the impeaching evidence. Appellant put his character in issue by attempting to demonstrate previous good conduct. *See State v. Johnson*, 586 S.W.2d

808, 809 (Mo.App.1979); *State v. Hamilton,* 569 S.W.2d 350, 353 (Mo.App.1978); *State v. Payton,* 559 S.W.2d 551, 554 (Mo. App.1977). Further, appellant by referring in direct examination to his prior involvement with weapons subjected himself to cross-examination, contradiction, and impeachment concerning the subject. § 546.-260 RSMo 1986. Nothing in the record indicates bad faith in the prosecutor's inquiry. *See Ballard,* 657 S.W.2d at 306. We find no plain error, and appellant's third point is denied.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.